IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

UNITED STATES OF AMERICA,          *

    Plaintiff,                        *

vs.                                *          CASE NO. 4:19-CR-26 (CDL)

THOMAS JASPER WILLIAMS,            *

    Defendant.                        *

_____

O R D E R

During a traffic stop, police officers searched Defendant's
car without a warrant and without a reasonable suspicion that it
contained a dangerous weapon or other illegal contraband. They
found a gun and ammunition in the car. This discovery escalated
Defendant's citation for driving at night without his headlights
illuminated to an arrest and subsequent indictment for being a
felon in possession of a firearm. Contending that the search of
his vehicle violated the Fourth Amendment to the United States
Constitution, Defendant filed a motion to suppress evidence of the
gun and ammunition and a non-Mirandized statement he made regarding
them. The Government responds that the initial investigatory stop
was based on a reasonably articulable suspicion that Defendant had
violated Georgia traffic laws by driving at night with his
headlights off, that the stop was not unreasonably prolonged, that
the warrantless search was authorized by Defendant's parolee

1

Fourth Amendment waiver, that the police officers had reasonable suspicion authorizing the search in light of Defendant's status as a probationer, and that, even if the search was constitutionally flawed, the evidence should not be suppressed because they would have inevitably discovered it anyway. Regarding Defendant's non-Mirandized statement, the Government maintains that it was made voluntarily before he was arrested and, thus, did not implicate Defendant's Miranda rights.

Based upon the following findings of fact and conclusions of law, the Court finds that the initial investigatory stop of Defendant's vehicle was based upon a reasonable articulable suspicion and that up until the point that the officers searched the inside of Defendant's car, the stop was not unreasonably prolonged. However, the Court further finds that the officers had no objective reasonable suspicion that Defendant's car contained a dangerous weapon or other illegal contraband. And, although Defendant was subject to a parolee Fourth Amendment waiver, that waiver only authorized "community supervision officers" to conduct warrantless searches of Defendant. It did not authorize all law enforcement officers, without authorization from or cooperation with a community supervision officer, to conduct a suspicionless search of Defendant's vehicle during a traffic stop. Therefore, the search of Defendant's car violated the Fourth Amendment. Because it is sheer speculation that the Government would have

inevitably discovered the gun and ammunition absent the officers'
warrantless search at the scene, evidence of the gun and ammunition
must be suppressed. As to Defendant's non-Mirandized statement
related to the gun, Defendant made that statement after the
officers had completed their investigation related to the reason
for the investigatory stop; thus, the stop had been
unconstitutionally prolonged at the time he made the statement,
and it too must be suppressed. Accordingly, Defendant's motion to
suppress is granted, and neither the evidence related to the gun
nor his statement about it shall be admissible at trial.

FINDINGS OF FACT

Based upon the evidentiary hearing on Defendant's motion to
suppress, the Court makes the following findings of fact:

1.

At twenty minutes past midnight on October 25, 2018,
Defendant, a convicted felon who was on both state probation and
parole for two separate offenses, was driving his girlfriend's
vehicle in a high crime area in Columbus, Georgia with the
headlights off. As luck would have it, a rookie police officer
with the Columbus Police Department encountered him as she was on
patrol. She turned around to pursue him with her lights flashing.
She perceived that he began to speed up, but he stopped shortly
without incident after turning onto a side street.

The officer approached the driver's side door of Defendant's vehicle and asked him to show her his hands, so that she could assure herself that he had no weapons. She then directed him to exit the car. He complied. By that time, another officer had arrived on the scene as backup. The first officer patted Defendant down outside the car for officer safety and found nothing. She asked if she could search his car, and he declined. She then retrieved his driver's license to process him for a traffic citation—driving without his headlights illuminated. When she ran the license check, it did not reveal any outstanding warrants, but it did disclose that he was a "known gang member" and should be considered "armed and dangerous." She also discovered that he was not the registered owner of the vehicle and that the car tag had expired a few days earlier. Defendant informed the officers that the car did not belong to him. While the detaining officer was processing the traffic citation, a third police officer arrived on the scene. This officer, who was more experienced than the officer who had pulled Defendant over, inquired about the conduct that led to the stop. That officer also did another check of the city's database to find out whether Defendant was under a Fourth Amendment waiver. Up until this point, the detaining officer was still processing the traffic citation. The decision to search the computer database for this additional information did not delay or

prolong Defendant's detention beyond what would have been required to complete the investigation and processing related to the original reason for the stop.

3.

The third officer discovered the notation "Fourth Amd." next to one of Defendant's convictions.  Based on his prior experience as an investigator with the District Attorney's Office, he understood this to mean Defendant had a Fourth Amendment waiver. He did not have access to a copy of the waiver; he only observed this shorthand notation.  He also saw that Defendant's criminal history indicated he was on parole and probation for state felony offenses.  Armed with this information indicating a Fourth Amendment waiver, he informed Defendant that they were going to search his car pursuant to that waiver.  The officers then handcuffed Defendant for officer safety during the search and informed him that the handcuffing was only temporary and that he was not yet under arrest.  As they began their search, the officers asked Defendant whether there was anything in the car they needed to know about.  He responded there was a gun under the seat.

4.

During the search, the officers discovered the following: (1) a stolen and loaded 9 mm pistol under the front passenger seat, (2) an extended magazine in the driver side door with 23 rounds of 9 mm, (3) two magazines that contained 11 and 12 9 mm rounds in

5

the front passenger seat, and (4) a box of Remington 9 mm in a gym
bag in the back passenger seat.

5.

Although the Government now contends that the officers had
reasonable suspicion to believe a weapon was in the car due to
Defendant's past criminal history, his presence after midnight in
a high crime area, and the manner in which he operated his vehicle
during the officer's pursuit of him prior to the stop, the officer
who instigated the warrantless search admits that he would not
have proceeded with it had he not learned of the Fourth Amendment
waiver because he would have been concerned about violating the
Fourth Amendment without the waiver.

6.

At the time of the stop, Defendant was on probation for
aggravated assault. A Fourth Amendment waiver was not a condition
of his probation. Hr'g (Aug. 13, 2019) Gov't Ex. 5, Probation
Order (Oct. 11, 2016).

7.

At the time of the stop, Defendant was on parole for Forgery
First Degree. As a condition of his parole, he agreed to and
acknowledged the following in writing: "My community supervision
officer or any other community supervision officer may, at any
time, conduct a warrantless search of my person, papers, and place
of residence, automobile, or any other property under my control."

Hr'g (Aug. 13, 2019) Gov't Ex. 4, Parole Order (Oct. 17, 2017) (hereinafter "Fourth Amendment waiver").

8.

The law enforcement officers who participated in the search of Defendant's car were all employees of the Columbus, Georgia Police Department. They were not employees of the Georgia Department of Community Supervision, and were not "community supervision officers." In addition, at the time of the warrantless search of Defendant's car, the police officers on the scene had made no contact with any community supervision officer who was directly responsible for monitoring Defendant or anyone else's parole. Although finding illegal contraband in Defendant's vehicle would likely violate the conditions of his parole, the police officers conducting the warrantless search were not motivated by parole compliance considerations. The search was designed to find evidence to support new criminal charges, even if a secondary consequence may be a parole violation.

9.

After discovering the gun and ammunition, Defendant was arrested for being a felon in possession of a firearm. Although he was also cited for fleeing to elude a police officer, there is no objective evidence to support a reasonable conclusion that he would have been subjected to a custodial arrest for that charge had the search of the vehicle not revealed a gun. While the

officers may have been justified in arresting him on that charge alone, which would have led to them impounding the vehicle, conducting an inventory search, and ultimately discovering the gun and ammunition, the Court finds that any such conclusion is sheer speculation. The Court notes that the evidence on the fleeing to elude charge is weak and based solely on a subjective feeling that he sped up and did not stop as soon as he should have. Yet there is no objective evidence that the officer who made the stop was focused on such a charge until another backup officer suggested it to her after the search occurred and the officers were planning to arrest Defendant for possessing the gun. She had not notified anyone that she was considering impoundment; no mention was made of the need for a tow truck. Thus, it is just as likely that she would have cited him and let him leave the scene in the car without arresting him and impounding the car. The current record does not support a finding that they would have inevitably found the gun even without the search at the scene.

## CONCLUSIONS OF LAW

The Fourth Amendment protects people from "unreasonable searches and seizures" by the Government. U.S. Const. amend. IV. Generally, searches and seizures require a written warrant supported by probable cause. *Id*. But, in exceptional circumstances, a warrantless search and/or seizure may not violate the Fourth Amendment. Defendant's pending motion to suppress

requires the Court to explore the parameters of permissible warrantless searches in the context of an investigatory traffic stop.

## I. The Investigatory Stop

It is beyond dispute that the Fourth Amendment does not prevent a police officer from stopping a person and detaining that person briefly in order to investigate a reasonable suspicion that the person has engaged in or is about to engage in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). This principle permits a police officer to conduct an investigatory stop of a vehicle. *United States v. Sharpe*, 470 U.S. 675, 682 (1985). "Reasonable suspicion" requires more than a hunch; there must be some objectively articulable justification for the stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Here, the officer observed Defendant driving a vehicle at night without illuminated headlights. The officer clearly had the right to stop the Defendant to investigate that traffic infraction.

The officers also had the right to check the Defendant's criminal history during the stop, which included discovery of the Fourth Amendment waiver. *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001) ("The request for criminal histories as part of a routine computer check [during a traffic stop] is justified for officer safety."). Moreover, as noted previously, this check did not prolong the stop beyond what was necessary to complete the

investigation of the traffic stop. *See United States v. Campbell*, 912 F.3d 1340, 1351 (11th Cir. 2019) (noting that even if inquiries are unrelated to a traffic stop, they are "permitted so long as they do not add time to the stop"). Accordingly, Defendant's Fourth Amendment rights were not violated up to the time that the officers began the warrantless search of his car.

Importantly, prior to learning of the Fourth Amendment waiver, the police officers did not have probable cause or reasonable suspicion to believe that a gun or illegal contraband was present in Defendant's car. They may have had a hunch based on his criminal history and his presence in a high crime area after midnight. But a hunch is not enough to justify a warrantless search of a vehicle. Moreover, the Government's argument that Defendant's failure to immediately stop for the detaining officer gave the officers reasonable suspicion to believe he was hiding contraband is unpersuasive. An innocent traveler could have a number of valid reasons for failing to immediately pull over for a police officer (e.g., failing to see the officer's lights, not having a shoulder to pull on to, confusion). Therefore, Defendant's brief failure to stop for the officer, without more, is not enough to create reasonable suspicion to justify the search of Defendant's car. *See United States v. Boyce*, 351 F.3d 1102, 1109-10 (11th Cir. 2003) (noting that reasonable suspicion should not be based on factors that "would likely apply to a considerable

number of those traveling for perfectly legitimate purposes" (quoting *United States v. Smith*, 799 F.2d 704, 707 (11th Cir. 1986)).

Although Defendant's status as a probationer alone would justify the officers' warrantless search if the search were supported by reasonable suspicion, the search here was not supported by reasonable suspicion. *See United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (finding that the search of a probationer was constitutional if supported by reasonable suspicion). And, the Court has located no binding authority standing for the proposition that a probationer's probation status alone could justify a search based on less than reasonable suspicion. *See id.* at 1311 n.9 (noting the Eleventh Circuit "offer[ed] no opinion on whether a warrantless search based on less than reasonable suspicion could be reasonable under the Fourth Amendment"); s*ee also United States v. Knights,* 534 U.S. 112, 120 n.6 (2001) (finding warrantless search of probationer with a Fourth Amendment waiver *supported by individualized suspicion* did not violate Fourth Amendment, but not deciding "whether the probation condition so diminished or completely eliminated, [the probationer's] reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirements of the Fourth Amendment"). The only factor that could swing the

balance in favor of a finding that the search was reasonable here is if Defendant's Fourth Amendment waiver sufficiently diminished his privacy interest that the State's interests outweigh his right to be free from a suspicionless search.

## II.  **Fourth Amendment Waiver**

The Supreme Court has clearly held that a suspicionless search of someone on parole based upon a clear and unambiguous Fourth Amendment waiver does not violate the Fourth Amendment.  *Samson v. California,* 547 U.S. 843, 846 (2006).  In *Samson,* the Supreme Court had to decide whether a Fourth Amendment violation occurred from a suspicionless search conducted under the authority of a California statute that required every state parolee to agree in writing "to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.*  The Supreme Court found no violation.  *Id.*  It began its rationale by describing the proper analytical approach for resolving the issue:

> "[U]nder our general Fourth Amendment approach" we "examin[e] the totality of the circumstances" to determine whether a search is reasonable within the meaning of the Fourth Amendment. . . . Whether a search is reasonable "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."

*Id.* at 848 (alterations in original) (quoting *Knights*, 534 U.S. at 118-19).  The Court then applied that approach to the suspicionless

search of a parolee who had agreed to *a search and seizure at any time for any purpose by any peace officer.* The Court first found that parolees have "severely diminished expectations of privacy by virtue of their status alone." *Id.* at 852. The Court then found it "salient" that the "parole search condition . . . —requiring inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer 'at any time,' . . . —was 'clearly expressed' to petitioner." *Id.* (quoting *Knights*, 534 U.S. at 119). It made this conclusion by observing that the petitioner had signed an order submitting to the condition "and thus was 'unambiguously' aware of it." *Id.* (quoting *Knights*, 534 U.S. at 119). Examining the totality of the circumstances pertaining to petitioner's status as a parolee, which the Court described as "an established variation on imprisonment" and which circumstances included "the plain terms of the parole search condition," the Court stated that "petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* (first quoting *Morissey v. Brewer*, 408 U.S. 471, 477 (1972)).

The Court then found that "[t]he State's interests, by contrast, are substantial." *Id.* at 853. It described the State's interest in supervising parolees as "overwhelming" because "parolees . . . are more likely to commit future criminal offenses." *Id.* (alteration in original) (quoting *Penn. Bd. of*

*Probation & Parole v. Scott*, 542 U.S. 357, 365 (1998)). In addition, the Court acknowledged that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Id.* The Court emphasized that a State's "ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." *Id.* The Court accepted California's empirically based contention that "[i]mposing a reasonable suspicion requirement . . . would give parolees greater opportunity to anticipate searches and conceal criminality." *Id.* at 854. The Court ultimately found that these substantial State interests outweigh a parolee's substantially diminished expectation of privacy, and therefore, the suspicionless search of a parolee who was knowingly under a Fourth Amendment waiver did not violate the Fourth Amendment. *Id.* at 857.

Although the record in the present case regarding the State's interest in being permitted to conduct suspicionless searches of parolees is not as thorough as the record presented to the Supreme Court in *Samson,* the Court accepts that the State of Georgia has similar substantial interests. The difference here is in the Defendant's expectation of privacy. The Court does not read *Samson*

to hold that all parolees have the same diminished expectation of privacy. Although being on parole alone diminishes one's expectation of privacy, other circumstances may affect the degree to which that expectation is diminished. Otherwise, the Supreme Court in *Samson* would not have emphasized that the petitioner there signed an unambiguous acknowledgment that he was subject to a warrantless search without any cause at any time for any reason by any law enforcement officer. And because he was aware that he had done so, his expectation of privacy was naturally diminished—not just because of his general status as a parolee but because he affirmatively acknowledged this diminished expectation of privacy.[1]

The Georgia Board of Pardons and Parole Fourth Amendment waiver in this case is different than the California law analyzed in *Samson*. Defendant here signed an acknowledgment stating: "My community supervision officer or any other community supervision officer may, at any time, conduct a warrantless search of my person, papers, and place of residence, automobile, or any other property under my control." Fourth Amendment waiver 2. This Fourth Amendment waiver has two significant differences from the one in *Samson*. Although it certainly notified Defendant that he

---

[1] The Court understands that *Samson* was not decided based upon the petitioner's consent to search due to the Fourth Amendment waiver. *See id.* at 852 n.3. But clearly the existence and content of the waiver affects his privacy expectation.

was subject to warrantless searches, it does not clearly and unambiguously inform him that he will be subject to them *without any cause*. *Cf*. *Samson*, 547 U.S. at 846 *(*"with or without a search warrant *and with or without cause*"). Moreover, Defendant's waiver restricts the warrantless search to "community supervision officers." *Cf. id*. ("by a parole officer or other peace officer"). "Community supervision officer" has a specific meaning under Georgia law. It means "an individual employed by [the Department of Community Supervision] who supervises probationers and parolees." O.C.G.A. § 42-3-1(3). Thus, Defendant understood that he was subject to certain warrantless searches by an employee of the Department of Community Supervision who supervises parolees, i.e., a parole officer. Unlike the California law in *Samson,* he was never placed on notice that he was subject to a warrantless search at any time for any reason with or without cause by any law enforcement officer. It is undisputed that the police officers who conducted the search of Defendant's car were not "community supervision officers." Nor were they requested by any community supervision officer to conduct the search. Neither they nor their search had any connection to the Department of Community Supervision.

The Court finds that the Defendant here had a higher expectation of privacy than the parolee in *Samson.* While Defendant arguably was aware that he could be searched at any time without

a warrant by a community supervision officer, he had no reasonable expectation that a patrol officer employed by the city police department could conduct a suspicionless search of his car during an investigative *Terry* stop. The Court does not read *Samson* to hold that Defendant's status as a parolee, standing alone, authorizes suspicionless searches of him at any time under any circumstances by any law enforcement officer.

Even though a State may have sufficiently substantial interests to require a parolee to essentially forfeit his Fourth Amendment rights this broadly, the State of Georgia has not gone this far. It apparently has determined that it can adequately supervise its parolees by limiting their Fourth Amendment waivers to the parole officers who are charged with the responsibility of supervising them. If the Georgia waiver here was as broad as the California waiver in *Samson,* then perhaps the totality of the circumstances would swing in favor of the constitutionality of the search. But given the more restricted nature of Defendant's waiver and thus Defendant's higher expectation of privacy, the Court finds that under the totality of the circumstances Defendant's interest in not being subjected to a suspicionless search by police officers during a traffic stop who have no connection to a community service officer outweighs the State's substantial, but not dispositive,

interest in authorizing such a search under these circumstances.[2]

Simply put, in terms of the Supreme Court's holding in *Samson*,

Defendant's condition of release does not so diminish or eliminate

his reasonable expectation of privacy that the suspicionless

search of his car under the circumstances presented here may be

permitted under the Fourth Amendment. 547 U.S. at 847.[3]

## III. Inevitable Discovery

Even if the evidence was obtained by unconstitutional means,

it may still be admissible if the Government inevitably would have

discovered it without the aid of unconstitutional police conduct.

*Nix v. Williams,* 467 U.S. 431, 444 (1984). To establish inevitable

discovery, the Government must show that the police possessed and

were actively pursuing the lawful avenue of discovery when the

unconstitutional conduct occurred. *United States v. Virden,* 488

F.3d 1317, 1322 (11th Cir. 2007). Although the Government argues

that the police here could have arrested Defendant for fleeing to

---

[2] The Court is aware of the unpublished opinion by a panel of the Eleventh Circuit Court of Appeals upholding the warrantless and suspicionless search of a Georgia parolee by police officers without making any distinction between the substance of the Fourth Amendment waiver in *Samson* and the Georgia parole waiver. *See United States v. Stewart,* 213 F. App'x 898 (11th Cir. 2007). This Court refuses to speculate as to why it made no difference to this panel, but there are a myriad of possibilities. The panel's failure to even address the issue diminishes the persuasive value of that nonbinding opinion.

[3] As previously noted, both sides of the totality of the circumstances scale here are different than in *Samson*. The Defendant's expectation of privacy here is higher due to the more limited nature of the waiver, and the State of Georgia's parole supervision interest is lower as evidenced by its decision not to extend the waiver to all law enforcement officers.

elude a police officer, impounded his car, and conducted an inventory search that would have revealed the gun and ammunition, the factual record does not support the conclusion that the police were pursuing an arrest and impoundment at the time they searched the vehicle without a warrant or reasonable suspicion. While the officer was considering a citation for fleeing to elude, it is speculation that she would have arrested the Defendant and impounded the car. At the time of the unlawful search, she had taken no action to prepare for the impounding of the car, and no testimony was presented that impoundment under these circumstances was standard procedure. Moreover, the fleeing to elude charge was not supported by substantial evidence and appeared to be an after-thought suggested to the citing officer by a backup officer at the scene. The police were certainly not actively pursuing impoundment at the time that they searched the car. It was not likely that they would have impounded the car had they not found the gun inside, and it was thus not inevitable that the gun or ammunition would have been lawfully discovered.[4]

---

[4] For the same reasons, the Government's argument that the officer would have had to impound Defendant's car because it had an expired tag and, thus, was not road-worthy is unpersuasive. The Government, again, presented no evidence that impoundment in these scenarios is standard procedure or that the officer contemplated impounding before the unconstitutional search was underway.

## IV.  The Non-Mirandized Statement

When Defendant made the statement about the gun being inside the car, he was in handcuffs.  He had not been advised of his Miranda rights because the police officers did not consider him under arrest.  They handcuffed him temporarily for officer safety so that they could search the inside of the car.  Although handcuffing alone may not cause an otherwise lawful detention to rise to an arrest, see *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995), the prolonged detention here in order to conduct an unconstitutional search of the car did amount to a Fourth Amendment violation.  It is clear that his statement about the gun was made after the investigation of the original reasons for the stop had been, or should have been, completed.  At the time of the statement, the officers had moved on to search the car pursuant to what they believed to be a Fourth Amendment waiver. The search had nothing to do with the traffic investigation. Because the search pursuant to the waiver was unconstitutional, Defendant's detention during that search, which was thus prolonged beyond what was necessary to investigate the traffic-related offenses, violated his Fourth Amendment right against unreasonable seizure.   *Campbell*, 912 F.3d at 1349 ("[A]uthority for the seizure . . . ends when tasks tied to the traffic infraction are— or reasonably should have been—completed." (quoting *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015)).  Accordingly, his

statement made after he was legally free to go yet still handcuffed must be suppressed.

CONCLUSION

For the reasons explained in this Order, Defendant's Motion to Suppress (ECF No. 16) is granted.

IT IS SO ORDERED, this 19th day of August, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA